IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2011

## RICHARD L. WILLIAMS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-C-1662     J. Randall Wyatt, Jr., Judge**

**No. M2009-01016-CCA-R3-PC - Filed November 16, 2011**

The Petitioner, Richard L. Williams, appeals from the Davidson County Criminal Court's denial of post-conviction relief from his guilty plea to second degree murder and twenty-five year sentence. In his appeal, the petitioner argues that he received ineffective assistance of counsel and did not enter his guilty plea knowingly, intelligently, and voluntarily due to the various failures of trial counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Dumaka Shabazz, Nashville, Tennessee, for the Petitioner-Appellant, Richard L. Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Katrin Miller, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

**Background.** On June 9, 2003, the body of Cassandra A. Richards was found in the trunk of a partially burned car in Davidson County, Tennessee. Her husband, the petitioner, was charged with first degree murder. On April 5, 2004, he entered a guilty plea to second degree murder and, pursuant to the plea agreement, received a sentence of twenty-five years as a Range I, violent offender. The facts supporting the guilty plea, as described by the State and stipulated to by the petitioner, were as follows:

> If this case had gone to trial, the Court would have heard testimony that at the time of her death, the victim in this case, Cassandra Williams, was thirty-five

years old. She was married to [the petitioner, and] they lived in Louisville, Kentucky. On [June 9], 2003, the decomposed body of [the victim] was found in the trunk of her car, in a vacant lot, at 3303 Dickerson Road, here in Davidson County. [The victim] had been reported missing on June the 4th from Louisville, Kentucky. Evidence at the scene, here in Davidson County[,] indicated that a person had tried to set [the victim's] vehicle on fire. It was partially burned, and also, attempted to set the body of [the victim] on fire. [The victim] was wearing a white nursing uniform with white socks and white tennis shoes.

Detective Jeff West was assigned to investigate this case, here in Davidson County. He contacted Detective Julius Clark with the Louisville Police Department who had . . . been working on the case as a missing person report. Detective Clark stated that he had spoken with the victim's family[, and] it was learned that [the victim] had filed for divorce in May of that same year, 2003. According to the defendant, who was talked to there in Louisville, [the victim] left their apartment on June the 2nd, at approximately 10:30 p.m., going to Savannah, Georgia, to pick up her nephew.

Family members stated that the victim had not planned to travel to Savannah, Georgia, on the week of June 2nd, but had planned to come the week of June the 9th. Family members, also reported to the Louisville Police Department that they believed foul play was involved in [the victim's] disappearance because of the volatile history in their marriage.

Investigation further showed that on June the 3rd, the [petitioner] bought a Greyhound bus ticket in Nashville, Tennessee, and left Nashville at approximately [11:00] a.m., and arrived in Louisville at approximately [3:00] p.m. Detective West interviewed Nathan Hancock, who was an employee of the Greyhound bus company. He identified the [petitioner] as standing inside the bus station a couple of weeks ago, here in Nashville.

Detective Clark, also, interviewed a friend of the [petitioner] named Rochelle Freeman[, and] during the interview, Ms. Freeman stated that she picked up [the petitioner] on June the 3rd, at approximately 3:30 p.m., a few blocks from the Greyhound bus station in Louisville, Kentucky. The [petitioner], later, gave a statement to Detective West, here in Davidson County. He admitted to Detective West that there had been an altercation between he and [the victim] in Louisville, Kentucky, [and] that he had pushed her down. She fell on the street and then tried to get in her car. [A]ccording to him, she collapsed. He, then, drove south on Interstate 65 towards

-2-

Nashville. According to [the petitioner], he noticed her breathing funny. He was going to take her to the hospital, but she expired before he was able to do so. [He] left her and offered no explanation as to why he put her in the trunk of the car and tried to set it on fire.

According to the Medical Examiner who did perform an autopsy on [the victim], the cause of death was strangulation.

The trial court stated that the petitioner's trial would have been two weeks after the plea acceptance hearing, and the court informed the petitioner that if he proceeded to trial on the first degree murder charge, he would be subject to a life sentence if found guilty. The court explained that the petitioner was pleading guilty to second degree murder and would receive a sentence of twenty-five years at one-hundred percent. The petitioner agreed with the court that he had decided to plead guilty to second degree murder rather than proceeding to trial on the first degree murder charge. The petitioner indicated that he understood that by pleading guilty, he was forfeiting his right to trial by jury, his right to present a defense at trial, his right to present witnesses, and his right to appeal. He also indicated that he understood that he was pleading guilty to a felony. He affirmed that he had read the plea petition in its entirety and understood it. The petitioner identified his signature on the plea petition, and he affirmed that the decision to enter the plea was voluntary. The trial court subsequently accepted the petitioner's plea.

No direct appeal was filed in this case, and on February 23, 2005, the petitioner filed a pro se petition for post-conviction relief. Following the appointment of counsel, an amended petition was filed. The petitioner argued that his trial counsel provided ineffective assistance and that he would not have pleaded guilty but for his trial counsel's errors.

**Post-Conviction Hearing.** Janice W. Reese, the petitioner's mother, testified that she met with the petitioner and trial counsel, and they discussed whether the petitioner should plead guilty or go to trial. Reese said that she met with trial counsel three times in person and spoke with him over the telephone several times. She said that trial counsel told them that if the petitioner did not plead guilty, that "he would either have to spend life in prison or he would even get the electric chair if he was found guilty." Reese stated that trial counsel did not give her any information about his trial strategy. When she asked him whether the forensics could show where the victim died, trial counsel responded that "they don't do forensics here." She listened to the tape recording of the police interviewing the petitioner but said that she did not hear the petitioner confess to the murder on the tape. Reese testified that trial counsel told her that he had never handled a murder trial before and was not "really that kind of a lawyer so this case was something new with him." She said that she understood that someone had taken "a picture of [the petitioner] getting on a Greyhound

-3-

bus," but she never saw it. She said, "I had to keep pushing even for that tape because [trial counsel] kept telling me that he couldn't get the tape."

The petitioner testified that he met with trial counsel "once, maybe twice a week." He recalled specifically asking trial counsel to contact Dorothy Fisher, his neighbor in Louisville, because she could place him at home on June 3. The petitioner also asked trial counsel to question Rochelle Freeman. Trial counsel told him that he could not obtain the police reports from Louisville or travel to Louisville to interview witnesses because he did not have the funds to do so. To his knowledge, trial counsel never interviewed Fisher or Freeman, but he agreed that he did receive a copy of the police reports from Louisville. The petitioner testified that he asked trial counsel to obtain an expert from the University of Tennessee who could "tell the specific time of death almost within the hour," but trial counsel told him that the court would not allow the public defender's office to conduct such an investigation. The petitioner said that the victim's time of death was important because the indictment listed the date of death as "on or around June 2nd" while the autopsy report indicated that she died on June 9 and the media was reporting that she died two to three days prior to June 9.

The petitioner testified that he asked trial counsel to challenge the territorial jurisdiction, but trial counsel responded that the argument did not apply and that Kentucky would seek the death penalty. The petitioner explained that he pleaded guilty in Tennessee because trial counsel told him that Kentucky would "[make] sure that [he] was going to die." The petitioner said that he never told investigators where "this event possibly occurred," but at the plea acceptance hearing, the State said that it happened on Interstate 65. He presumed that the State's information came from a second report from Detective West, but he had not seen the second report. When he asked trial counsel about the report after the plea acceptance hearing, trial counsel denied any knowledge of such a report. The petitioner also told counsel that, based on the State's version of the facts, Tennessee did not have jurisdiction, but trial counsel told him that it "really don't [sic] matter."

He recalled that trial counsel told him that the State had a witness, a bus driver, who saw him at a bus station. The petitioner said that the bus driver's testimony and Freeman's testimony that she picked him up near a bus station would have been enough to convict him. According to the petitioner, the detectives told him that they had a video of him getting on a bus in Nashville, but when he asked trial counsel to obtain that video, trial counsel told him that the State would not give it to him. Trial counsel told him that the State was responsible for denying motions and that the State would "more than likely turn . . . down" any of the motions that he might file, including a motion to discover the videotape.

The petitioner testified that during his interview with detectives, the detectives would turn off the tape recorder and threaten him. He told trial counsel about the threats, and trial

-4-

counsel prepared a motion to suppress the statement. Trial counsel told him that the suppression motion was a strong argument. Trial counsel later told him that the State had denied the suppression motion. The petitioner testified that he learned that the motion was never heard because the hearing on the motion had been set the same day that he accepted the plea. He said, "I would not have took [sic] the plea if I would have known that they was [sic] going to hear the motion because [trial counsel] was saying that it was a good motion."

The petitioner testified that he wanted trial counsel to pursue a theory of manslaughter. He said that he "knew that [he] could be convicted of manslaughter" because he did not intentionally kill his wife. He also said that trial counsel never discussed lesser-included offenses or the plea petition with him. Instead, the petitioner recalled that trial counsel merely gave him a sheet of paper to sign. He said that trial counsel told him that if he accepted the twenty-five-year sentence, then he would be out of prison in seven years. When the trial court said during the plea acceptance hearing that the sentence would be served at one-hundred percent, he asked trial counsel if that was correct. Trial counsel responded that "they will fix that when you get to the Department of Corrections." The petitioner explained that he did not stop the proceedings or ask the trial court any questions because he trusted what trial counsel told him.

On cross-examination, the petitioner agreed that he went to college for two years and majored in business. Before the victim's death, he was working as a mechanical engineer, a job for which he had received special training. He denied having a total of seven felony convictions in Georgia, but he agreed that he had been convicted by a jury once and pleaded guilty more than once. According to the petitioner, Georgia had a determinate release system, and he knew exactly what date he would be released from prison there as opposed to the release eligibility percentages used in Tennessee. He said that trial counsel discussed his prior convictions with him and that the State was seeking to enhance his punishment, but trial counsel believed that they could challenge the prior convictions because they were from another state. When the State showed him the plea petition, he said that it was not his signature on the document. The petitioner agreed that his version of events was that he accidentally killed his wife. He said that he "tried to revive [his] wife for three and a half hours" but panicked when she died. He explained that "the last person [he was] trying to contact at that time [was] the police." The petitioner testified that he did not strangle the victim, despite the conclusion of the autopsy, which he claimed had inconsistencies.

Trial counsel testified that he graduated from law school in 1996 and immediately began working at the public defender's office. He said that his practice was exclusively indigent criminal defense and that he had handled many types of cases, including homicide and "all types of defense." When he was assigned the petitioner's first degree murder case, he was confident in his ability to represent the petitioner. Trial counsel testified that the public defender's office used a computer program "to enter our time on a case while we

proceed" and "to keep a record of what . . . we have done in a case." He used that program to keep a record of his interactions with the petitioner and his investigation. Trial counsel said that he did not have the name Dorothy Fisher in his notes, but if the petitioner had told him that she could provide him with an alibi, he would have followed up. He testified that he had "never had a problem investigating across state lines," and his investigator had spoken with Rochelle Freeman. Trial counsel said that he received several police reports during the discovery process, including reports from Louisville, and he had spoken over the telephone with Detective Clark. Trial counsel identified a letter that he sent to the State requesting "pictures, property seized in the Louisville Police Department, bus ticket or receipt or paperwork, and the line-up shown to Mr. Hancock and a number of other items, Latrell Gordon's statement, [and a] copy of the statement that [the petitioner] made in Louisville." The letter was admitted into evidence as Exhibit 8.

Trial counsel testified that he represented the petitioner from July 2003 until April 2004, and that he "continued the entire time to be thinking about a potential defense." He explained that everything he did was "geared toward making a defense," including "attacking evidence, motion[s], suppression motions, thinking about issues like venue, interviewing witnesses, speaking to different individuals involved, [and] speaking with the client about what the chances are." He further explained that obtaining the best plea offer possible was also part of making a defense.

Trial counsel agreed that venue was an issue in this case and that he had numerous conversations with the petitioner about it. His understanding of the law was that nothing prevented Kentucky from charging the petitioner because the victim "was actually potentially deceased in Louisville." He said that the Louisville Public Defender's Office death penalty unit advised him that "their state and their particular jurisdiction . . . was much more likely to seek a death penalty" than "the State [was] here in Nashville."

Trial counsel said that he did not recall the petitioner telling him about an expert at the University of Tennessee who could determine the victim's time of death down to the hour. He further said that, in his experience, medical examiners were "much more likely to give you ballparks in terms of hours[,] even days quite frankly[,] depending on the decomposition."

Trial counsel testified that he filed a motion to suppress the petitioner's statement to police and that it was "a very legitimate argument." The State made clear to him, however, that "should the State [have been] required to litigate [the motion to suppress,] it would substantially detract from [the petitioner's] offer." He said that he would not have told the petitioner that the State granted or denied motions. Trial counsel also said that he would never have told the petitioner that he would only serve seven years. He recalled sending a letter to the petitioner explaining that the State's first offer was a sentence of twenty-seven

years for a plea to second degree murder. He did not remember whether that letter discussed the lesser-included offenses of first degree murder, but he said that his practice was to discuss lesser-included offenses with clients. Trial counsel testified, "I cannot imagine with the number of times that we met that we did not speak about lesser included offenses."

Trial counsel noted that the plea petition, entered into evidence as Exhibit 6, had been signed on March 24, 2004, several days before the plea acceptance hearing. He said that the early date led him to believe that he went to the jail to review the plea petition with the petitioner so that they would have more time to discuss it rather than discussing it with him prior to the hearing. Trial counsel stated that he would never have forged the petitioner's signature. While he did not have an "independent recollection of [the petitioner] putting his pen to his paper," he was "certain beyond all measure of certainty that [the petitioner] signed" the plea petition. He was also certain that he would have reviewed the plea petition thoroughly with the petitioner and would not have given him a single sheet of paper to sign. Trial counsel denied that he badgered the petitioner into pleading guilty, stating that it was the petitioner's decision.

On cross-examination, trial counsel testified that most of the individuals listed as witnesses on the indictment were police officers or family members. He said that several of them testified at the preliminary hearing, and he or his investigator interviewed Rochelle Freeman, Nathan Hancock, and John Gerber. He recalled asking an investigator to interview the witnesses on the indictment who were civilians, but he did not "recall bringing specific attention to [Dorothy] Fisher." Trial counsel said that there was no reason why he chose not to talk to Fisher. He stated, "My expectation is either [the investigator] attempted to [talk to her] or we had not spoken to her yet and from looking at my notes I don't recall anything about [the petitioner] mentioning her as an alibi witness[,] in which case I am certain that we would have talked to her."

Trial counsel testified that he believed the detectives told the petitioner about a videotape of him at a bus station as a ruse and that the tape did not actually exist. While he did not recall the petitioner requesting a line-up for Nathan Hancock, the Greyhound bus driver, to attempt to identify him, trial counsel did not believe that such a line-up would have been in the petitioner's best interest. Regarding the audiotape of the petitioner's interview with detectives, trial counsel recalled that there were times where the recording was inaudible and other times where the recording might have been stopped and restarted. After reviewing the transcript of the recording, he testified that at one point the detectives had to turn the tape over to continue recording. He said that the breaks in the recording appeared to be natural, but he also said that if the petitioner had told him that the detectives threatened him during those breaks, he would have pursued that argument in a hearing on a motion to suppress the statement. Trial counsel stated that the petitioner wanted to litigate the motion to suppress

but "that was tempered after conversations" where they discussed the State's position that it would change the petitioner's offer if the court granted the motion to suppress.

Trial counsel testified that he spoke with the medical examiner, who told him that he could not determine whether the victim was alive when the petitioner placed her in the trunk of the car. He did not hire an independent medical examiner to review the autopsy. He said he would have been hesitant if a medical examiner told him the exact time of death because in his experience, medical examiners did not do that. Trial counsel said that he and the petitioner extensively discussed the venue issue. He opined that if they had won that issue, there was a significant chance that Kentucky would have indicted the petitioner.

Trial counsel said that he would have explained the concept of premeditation to the petitioner. He further said that pursuing a theory of voluntary manslaughter was troublesome because of the difficulty of proving provocation. He would have used the fact that the victim caught the petitioner cheating on her to support an argument that there was adequate provocation but it would have been a difficult argument.

Following the proof at the post-conviction hearing, the post-conviction court denied the petition by written order. The court found that trial counsel adequately investigated the petitioner's case and that trial counsel made a tactical decision to not pursue the venue issue. The court further found that the petitioner did not prove prejudice regarding his allegation that trial counsel did not formulate a trial strategy. The court found that trial counsel was "prepared to argue that the [p]etitioner should be convicted, if at all, of voluntary manslaughter." The court noted that the petitioner admitted to his involvement in the victim's death, and, consequently, his allegation that trial counsel failed to investigate alibi witnesses had no merit. Specifically regarding the petitioner's allegation that trial counsel should have subpoenaed Dorothy Fisher, the court found that the allegation was without merit because of "the obvious discrepancies between her purported testimony and the statements of the [p]etitioner." The court found that trial counsel had the experience necessary to adequately represent the petitioner because he exclusively practiced criminal law. The court determined that trial counsel adequately advised the petitioner regarding the plea petition and his trial strategy. Regarding the petitioner's allegation that trial counsel should have obtained an expert from the University of Tennessee to determine the victim's exact time of death, the court found that the petitioner failed to show prejudice. The court determined that trial counsel requested any possible exculpatory evidence from the State during the discovery process, and the petitioner's contention that trial counsel failed to file a Motion to Compel Exculpatory Evidence was without merit. The court found that the petitioner made a voluntary decision to accept the State's plea offer rather than litigate the Motion to Suppress Statement and that the petitioner failed to show he was prejudiced by the failure to litigate the motion. Additionally, the court found that the petitioner's voluntary decision to accept the State's offer was made after trial counsel adequately advised him

regarding the evidence in the case, the sentencing ranges, and the advantages of accepting the offer. The court found that trial counsel met with the petitioner approximately twice per week, and, therefore, the petitioner's allegation that trial counsel did not keep in contact with him was without merit. The court concluded that trial counsel's representation was "competent and thorough." The court further concluded that trial counsel fully apprised the petitioner regarding his sentence and that the petitioner voluntarily, knowingly, and intelligently entered his plea of guilty.

Following the denial of the petition for post-conviction relief, the petitioner, through counsel, requested that this court waive the timely filing of the notice of appeal. This court determined that waiver was appropriate in this case. Subsequently, the petitioner filed a notice of appeal.

## ANALYSIS

The petitioner claims that trial counsel provided ineffective assistance prior to the entry of the petitioner's guilty plea. He asserts that trial counsel's performance fell below the standard of reasonableness for criminal attorneys and that he would not have pleaded guilty but for counsel's errors. The State responds that the post-conviction court properly denied the petition for post-conviction relief because trial counsel was not deficient in his preparation for the case, his investigation of the case, his development of a trial strategy, or his advice to the petitioner. We agree with the State.

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the

conclusions drawn from it.  Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component."  Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms."  Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936).  Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 370.  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Id. (quoting Strickland, 466 U.S. at 694).  In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

**I. Ineffective Assistance of Counsel.**  The petitioner argues that trial counsel was ineffective by failing to (1) adequately investigate his case; (2) litigate a motion to suppress his statement; (3) challenge venue or jurisdiction; and (4) obtain key evidence from the state or review with the petitioner the evidence against him.[1]

**1. Investigation.**  The petitioner contends that trial counsel failed to properly investigate his case.  He first claims that trial counsel failed to contact an alibi witness.  He also argues that trial counsel should have obtained an expert who could determine the victim's exact time of death.  The petitioner argues that he "did not have sufficient information to contribute or make a decision concerning his case because it was not fully investigated."

---

[1]  The petitioner raised more claims of ineffective assistance of counsel in his petition for post-conviction relief and orally before the post-conviction court.  In his brief to this court, he limits his claims to those addressed in this appeal.  As such, all other claims are waived.

At the post-conviction hearing, the petitioner did not present either Dorothy Fisher or a medical expert. He claims that Dorothy Fisher could have placed him in Louisville at the same time that the State alleged that he was in Nashville. He further claims that he had heard of medical experts who could narrow down a victim's time of death to the exact hour, which "he believed was crucial to his defense," and asked trial counsel to obtain such an expert. Trial counsel, however, testified that the petitioner did not tell him that Dorothy Fisher could possibly provide an alibi and did not suggest hiring a medical expert. He further testified that, in his experience, medical experts would never give an exact time of death. The trial court accredited trial counsel's testimony.

This court has previously concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case,
>
> (b) a known witness was not interviewed,
>
> (c) the failure to discover or interview a witness inured to his prejudice, or
>
> (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. Despite the petitioner's claim that trial counsel provided ineffective assistance by not contacting either proposed witness, he failed to present the proposed witnesses at the post-conviction hearing. See Black, 794 S.W.2d at 757. Consequently, the petitioner has not shown that trial counsel's performance was deficient nor that he was prejudiced by any deficiency. He is not entitled to relief as to this issue.

**2. Motion to Suppress.** The petitioner argues that trial counsel's performance was deficient because trial counsel failed to litigate a motion to suppress the petitioner's statement to detectives. He claims that if trial counsel had litigated the motion to suppress his statement, he would have gone to trial rather than accept the State's offer. At the post-conviction hearing, the petitioner testified that trial counsel told him that they had a strong argument to suppress the statement but that the State had turned down the motion. He further testified that he did not know that the motion had never been litigated until after he had pleaded guilty. Trial counsel's testimony, accredited by the post-conviction court, was that

he would never have told the petitioner that the State determined the outcome of the motion and that he explained to the petitioner that if they successfully litigated the motion, the State would have changed the plea offer. The record does not preponderate against the post-conviction court's finding that the petitioner was aware of the status of the motion to suppress and that he chose to accept the plea rather than proceed with the motion. Furthermore, we will not second-guess trial counsel's strategy regarding the motion to suppress. See Burns, 6 S.W.3d at 462; Strickland, 466 U.S. at 688-89.

**3. Venue & Jurisdiction.** The petitioner argues that he asked trial counsel to challenge Tennessee's jurisdiction to try his case. He contends that there was no evidence that the victim died in Tennessee. Trial counsel testified that he thoroughly discussed the issue with the petitioner. He said that his research indicated that if they successfully challenged the venue, Kentucky would most likely have indicted the petitioner. The post-conviction court ruled that trial counsel's decision not to challenge the venue was tactical. We will not second-guess trial counsel's strategy regarding this issue. See Burns, 6 S.W.3d at 462; Strickland, 466 U.S. at 688-89. Accordingly, the petitioner has failed to show that trial counsel's performance was deficient, and he is without relief as to this issue.

**4. Evidence.** Finally, the petitioner argues that trial counsel failed to obtain key evidence from the State, including a videotape of the petitioner at the bus station, paperwork showing that the petitioner traveled by bus from Nashville to Louisville, and reports from the Louisville Police Department, and trial counsel failed to review the evidence with the petitioner. At the post-conviction hearing, trial counsel testified that he pursued the videotape but came to believe that it did not exist and that the detectives used it as a ruse when interviewing the petitioner. He further testified that he received police reports from Louisville, and he requested from the State any bus tickets, receipts, or paperwork that it had in its possession. The record indicates that trial counsel met with the petitioner one to two times per week over the course of his representation. Trial counsel testified that some of those meetings were to discuss the State's offer and others were to "go over [the] situation." Trial counsel said that he discussed with the petitioner what facts the State could use to prove premeditation and what facts could support an argument for voluntary manslaughter. The post-conviction court found that trial counsel adequately apprised the petitioner of the evidence in the case. We agree with the post-conviction court and conclude that the petitioner has not shown that trial counsel provided ineffective assistance regarding this issue. Furthermore, the petitioner has failed to show any evidence that trial counsel provided ineffective assistance in the course of his representation.

**II. Guilty Plea.** The petitioner argues that he would not have pleaded guilty but for trial counsel's errors. When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn.1977), superseded on

other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn.1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242, 89 S. Ct. at 1711. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244, 89 S. Ct. at 1712. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats. . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S.Ct. at 1712). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligent. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Here, the petitioner first contends that his guilty plea was not knowing and voluntary because trial counsel coerced him into accepting the plea offer by telling him that if he did not accept the plea offer in Tennessee, then Kentucky would seek the death penalty. At the post-conviction hearing, trial counsel testified that the Louisville Public Defender's Office informed him that there was a substantial chance that Kentucky would seek the death penalty in the petitioner's case if the case were tried there. This information came about during trial counsel's investigation into the venue issue. He testified that he provided the petitioner with the information in the context of their discussions about venue. The post-conviction court accredited trial counsel's testimony and found that trial counsel adequately advised the petitioner about the advantages of accepting the plea offer. The record does not preponderate against the findings of the trial court, and the petitioner is not entitled to relief on this issue.

The petitioner further claims that trial counsel led him to believe that he would be incarcerated for seven years of his twenty-five-year sentence. At the post-conviction hearing, he testified that when the trial court stated that his sentence would be served at one-hundred percent, trial counsel told him that the department of correction would correct his sentence. The petitioner said that he trusted trial counsel and did not stop the plea acceptance

proceedings. Trial counsel, however, testified that he would never have told the petitioner that he would only serve seven years. He recalled that the State's first offer was for twenty-seven years, and he negotiated the sentence down to twenty-five years. The post-conviction court accredited trial counsel's testimony and found that trial counsel fully apprised the petitioner of his sentence. Nothing in the record preponderates against the post-conviction court's findings, and we conclude that the petitioner has not shown that his plea was not knowingly and voluntarily entered. The petitioner is not entitled to relief for this issue.

Finally, we are compelled to note that the petitioner briefly mentions for the first time on appeal that his guilty plea was entered involuntarily and unknowingly because he "was misled as to where he would serve his sentence[] and was not mentally competent to enter his guilty pleas." The petitioner has not supported this statement with any argument, reference to the record, or citation to authorities. Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court. See Tenn. Ct. Crim. App. R. 10(b); State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). Furthermore, the record shows that the trial court adequately advised the petitioner of his rights during the plea acceptance hearing, and the petitioner waived his rights. The post-conviction court determined that the petitioner entered his guilty plea knowingly, intelligently, and voluntarily, and the record does not preponderate against that finding. Therefore, we conclude that the petitioner has failed to show that the post-conviction court erred by denying his petition for post-conviction relief. He is without relief in this matter.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-14-